## Crawford County Auditors' Report.

PRATHER, P. J., Dec. 19, 1927.—The question submitted is whether Sheriff Charles H. Jones should be surcharged with $1118.87, with interest from Jan. 31, 1927, the admitted amount of uncollected fees for the year ending Dec. 31, 1926, upon civil writs not returned, nor fees accounted for, nor any transcript of uncollected fees filed and listed with the county treasurer. The auditors reported a surcharge of $2412.80. It is now agreed that the sheriff is entitled to certain credits thereon, reducing such uncollected fees to $1118.87. Under the facts submitted, judgment is to be entered for the county for this amount or to be entered generally for the sheriff.

The facts submitted are, substantially:

1. Crawford County is a county of the sixth class, and, hence, its sheriff is a salaried officer, pursuant to the provisions of the Act of May 11, 1925, P. L. 559.

2. Charles H. Jones is the duly elected, qualified and acting sheriff of said county, and was so during the year ending Dec. 31, 1926.

3. That during said year there came into his hands as sheriff a large number of civil processes, for the execution of which he received no previous indemnity or money, and for which writs he had received no fees at the end of the year 1926. The $1118.87 represents such uncollected fees.

Most of these writs, at the time of said audit in January, 1927, for some unexplained reason, remained in the sheriff's hands, no return of their execution having been made to the proper office, nor any list of any "Fees . . . earned and outstanding" having been filed in the county treasurer's office, nor any list thereof filed, taxed and judgments entered thereon against the party for whose benefit the services were rendered.

### Discussion.

The question submitted requires consideration of the Act of May 23, 1923, P. L. 347, together with the Act of May 11, 1925, P. L. 559. The former act provides: "No sheriff shall be required to render any service in any civil proceeding until he receives indemnity satisfactory to him for the payment of

his official fees, mileage, expenses and legal costs, or prepayment of same, from the party at whose instance or for whose benefit such service is to be performed, but any money advanced for his charges, and ' not earned or expended, shall be refunded to the payer thereof . . . and in case he does not receive his charges in advance or upon demand, he may file with his return an itemized list of unpaid fees, mileage, costs and expenses respecting the services to which such return relates, and, if no exceptions are filed to the same within thirty days from the time of making such return, the items included in such list shall be considered taxed and confirmed as fees and costs due such sheriff and become a judgment in law against the party for whose benefit the services were rendered."

Section 2 of the latter act provides: "He (the sheriff) shall keep necessary books and make necessary entries of receipts and disbursements of all moneys earned and chargeable upon the county, specifying the day and date, title of case, for what service and from whom received or due and shall on the first Monday of each and every month pay to the treasurer of the county all fees so received during the preceding month, filing therewith a transcript in detail of his fee account-book for said month, which shall be verified by him under oath or affirmation to contain a true and correct list of all fees received or earned and outstanding . . . for services rendered in his office during said month."

Section 5 of said act provides: "All rights of action and all other remedies heretofore granted or extended to said sheriffs for the collection of their respective fees are hereby extended and shall inure to the benefit of the several counties affected by this act for the collection of all fees and costs that may hereafter accrue to said counties under the provisions of this act."

The Act of 1923 was passed for the protection of the sheriff and extends to him four alternative methods to secure the payment of his fees: (1) Indemnity or guarantee of payment before performing said services; (2) money deposited in advance to be applied to such payment; (3) withholding the return of his writ until payment has been made; (4) the filing of his claim and entering judgment against the one for whose benefit the service was rendered.

In addition to these securities, he could perform the service on faith and collect from the defendant if possible.

In the passage of this law, the legislature was either responding to an imperative necessity for the extension of its remedial provisions to this office or was spurred to do so because of the importunity of the sheriffs of the State. In either event, it was a proper recognition of a condition that too many patrons of the sheriff's office had for too many years dealt unjustly with this office in their light regard for their moral and legal obligation to pay the fees to this office for the services rendered at their instance and for their benefit.

The old theory of the public was, "Get your fees out of the defendant;" the new theory of the law, in opposition to the old, under the Act of 1923, is, "Get your fees from the plaintiff and let him get his claim for debt and fees out of defendant through the execution of the process or writ."

The Sheriffs' Act of 1923 authorizes and invites a new program in the conduct of the office for collection of fees. Its provisions being salutary, just and imperatively necessary to the protection of this office, the presumption follows that these provisions were intended to be observed.

When the legislature passed the Sheriffs' Salary Act of May 11, 1925, P. L. 559, placing all sheriffs of counties of the sixth class under a salary to be

paid by the county, it transferred all his fees and earnings to the county and at the same time for the protection and reimbursement of the county enacted: "All rights of action and all other remedies heretofore granted or extended to said sheriffs for the collection of their respective fees are hereby extended and shall inure to the benefit of the several counties affected by this act for the collection of all fees and costs that may hereafter accrue to said counties under the provisions of this act."

In so doing, it made the sheriff, as to such fees and earnings, a quasi-agent and trustee for the county, a relation which required him to affirmatively perform such one of the four alternatives provided under the Act of 1923, relating to the collection of fees, as would reasonably and effectively protect the county from loss in its new property rights in these fees. Generally, an agency is revocable, which implies power in the principal to protect himself from continuing loss growing out of his agent's neglect. But in the present case the agency is created by law for a definite tenure and the county, as a quasi-principal, has no power, express or implied, to direct, cancel or revoke said agency. The statute creating it has prescribed its duties and the manner of their execution.

Under the old administration of this office, when the sheriff's recompense was his fees, he had a right to collect his fees or forego their collection and donate them to whomsoever he desired; they were his. Under the present salary system, they are no longer his, but belong to the county. The right to donate them or to ignore their collection has now ceased.

But the county can only receive its money through the sheriff's compliance with the forms of collection directed by the statute. If the sheriff fails to collect and turn over the fees, the only other avenue through which the county can protect its interests is the entry of judgments against the persons who requested the service. The county could not do this because the sheriff failed to comply with the statute wherein it required him to file with the county treasurer each month "a transcript in detail of his fee account-book for said (preceding) month . . . verified by him under oath or affirmation to contain a true and correct list of all fees received or earned and outstanding . . . for services rendered in his office during said month."

No one suggests that the sheriff has acted dishonestly, but in adopting the old system of collection of fees and ignoring the procedure outlined by the new system he has acted mistakenly. If the unreturned and unreported writs comprising the uncollected fees mentioned in the auditors' surcharge are all now collectible, no injury has been done. If they are partly uncollectible, then he who failed to invoke the remedies that would have avoided the loss must suffer the loss. This is in effect a commingling of good and bad accounts, rendering it impossible to separate the good from the bad and assemble them in their separate parts. He who by his act of commission or omission brings about such a condition must account for the whole. This is a familiar rule relating to commingling of goods, and, in principle, is directly applicable here.

Fortunately, it was reported at the time of arguing this case that the sheriff had, after said audit, collected nearly all the outstanding accounts represented by said surcharge.

We are not required, in the consideration and decision of the question submitted, to inquire and determine whether the sheriff must, in all instances, require a deposit in advance or some other indemnity before executing civil process directed to him. In view of the preceding discussion, we have no hesitancy in concluding the wisdom of so doing.

Whether or not these protective features are mandatory, we are compelled to hold that the provisions of the Act of 1925, requiring the sheriff to file monthly with the county treasurer "a correct list of all fees . . . earned and outstanding," are mandatory.

While the act does not provide that such failure shall make the defaulting officer liable for such fees, this principle is imbedded in the common law too firmly to require such a provision.

It follows that judgment should be entered against exceptant.

### Order.

Now, Dec. 19, 1927, judgment is directed to be entered against exceptant, Charles H. Jones, for $1118.87, the amount in controversy according to stipulation as of July 5, 1927, with interest from Jan. 31, 1927, subject to credits thereon not heretofore allowed for payments, if any, made since July 5, 1927.

J. Perry Eckels, Meadville, Pa.